[Civ. No. 7996. Third Dist. Dec. 4, 1951.]

J. E. GREENE, Respondent, v. M. & S. LUMBER COM-
PANY et al., Appellants.

Robert C. Dunn for Appellants.

Wilbur U. Goodman, Burt D. Goodman, Dunnell, Herbert & Dunnell for Respondent.

VAN DYKE, J.—On April 24, 1949, about 9 o'clock p. m. plaintiff-respondent Greene was driving a light pickup truck south on the Dixon cutoff highway near the intersection of that road with State Highway No. 12 which runs westerly from Rio Vista in Solano County and is a through highway. Near the intersection a stop sign guarded the through road and respondent stopped at the point where this sign stood. He testified as follows: He looked left and right along highway 12 and saw no vehicle approaching; his view to the left was limited to approximately 300 feet, at which point approaching vehicles would become visible as they topped a rise

and entered a downgrade to the intersection; he shifted into low gear and proceeded from the stop sign into the intersection, intending to turn left and proceed towards Rio Vista; as he entered upon the traveled portion of Highway 12 he saw the truck and trailer of defendant-appellant M. & S. Lumber Company, driven by defendant-appellant Stanley Walker; the truck and trailer were coming down the incline approximately 300 feet away; he traveled an additional 20 or 30 feet where his rig was struck, resulting in property damage, for which he sued. The lumber company cross-complained for damages to its equipment. The trial court awarded respondent a judgment for $1,000, finding the driver of the truck and trailer to have negligently operated the same, and finding against the allegations of the cross-complaint and answer charging respondent with negligence and contributory negligence. There was testimony that appellants' equipment, weighing 34,000 pounds and equipped with hydraulic brakes on six axles, left skid marks 268 feet in length up to the point of impact and 180 feet in length from that point to where the truck and trailer came to rest. A short distance ahead of the stop sign, at which respondent stopped, there was painted on the Dixon cutoff road on which he traveled a broad white line and the word "Stop." The record does not definitely disclose the distance between the stop sign and the white line or between the white line and the traveled portion of Highway 12, but the fair indication from the record, including the photographs admitted in evidence, is that these distances were not great. Appellant Walker testified he was driving his equipment at about 50 miles per hour when he approached the intersection with the Dixon cutoff road, then reduced to 45 miles per hour. When 200 feet from the intersection, and observing that respondent was entering the intersection, he applied all of his brakes at maximum. His equipment was 59 feet in length.

Appellants first contend that as a matter of law they were not guilty of negligence. The contention cannot be sustained. From the facts the trial court could have found that the truck and trailer were proceeding at an unlawful rate of speed. Section 515 of the Vehicle Code provides that a motor truck and trailer equipped with pneumatic tires, as was the case here, shall not be operated upon a highway at a speed in excess of 40 miles per hour. The trial court could have determined that this speed limit was being greatly exceeded and that at the speed indicated the equipment could not have been

stopped after it came into view of the intersection before it passed the same. The trial court's determination that the truck and trailer were being negligently operated and that this negligence was a proximate cause of the collision is sustained by the evidence.

Appellants next contend that the respondent was guilty of contributory negligence as a matter of law. Principally this contention is based upon a claim that by stopping at the stop sign he violated section 577 of the Vehicle Code. The section provides that:

"The driver of any vehicle upon approaching any entrance of a highway or intersection, signposted with a stop sign . . ., shall stop before entering the nearest crosswalk or, if none, then at a limit line when marked, otherwise before entering such highway or intersection."

Although the term "limit line" is not defined in the Vehicle Code, nevertheless we think it common knowledge that it refers to the broad white line preceded by the word "Stop" in large letters, which device is usually painted on the pavement at or beyond the stop sign. This device appears at literally thousands of intersections along the state highway system and is a standard device described in the Manual of Safety Devices published by the Division of Highways of the Department of Public Works. The device is one that is common to many states. It is described in the Manual of Uniform Traffic Control Devices for Streets and Highways, published by the Public Roads Administration. It is to be noted that while the section quoted from does not, with respect to crosswalks or intersections, designate the exact place at which a stop is to be made, merely providing that the stop shall be made "before entering," yet with respect to limit lines the statutory language is definite and requires a stop to be made "at" the line when marked. It is easy to ascribe a sound reason why a considerable latitude should be allowed as to the stopping point when approaching a crosswalk or intersection, whereas the requirement is more strict as to a limit line. There are situations where it is material to the safety of the traveling public that a vehicle be brought approximately to a definite point and stopped there in order to assure a better view and a shorter time after starting to attain a position of safety; and further to assure observation of the vehicle about to enter the favored traffic lane by those approaching its projected path. In many situations it would make little difference whether the stop was made at the stop sign or anywhere between the stop sign and

the intersection, but there are other situations in particular localities where maximum safety requires that the point where the stop shall be made be indicated. When, therefore, respondent stopped at the stop sign, which was some undetermined distance back from the limit line as painted on the Dixon cutoff road on that day, and having so stopped proceeded into the intersection without stopping at the limit line, he violated, at least technically, the clear mandate of the law, which mandate was laid down for his protection and for that of the other travelers who might be using the highway into which he desired to enter. Such conduct was negligent.

But it still remains to decide whether or not this conduct, negligent though it was, was a proximate cause of the ensuing collision. "Before a violation of a statute can be negligence *per se* so as to impose liability it must be shown that the violation was a proximate cause of the injury." (*Wohlenberg* v. *Malcewicz,* 56 Cal.App.2d 508, 512 [133 P.2d 12].) "The fact that . . . respondent may have violated one or more traffic regulations does not necessarily mean that he was chargeable with contributory negligence; to bar recovery on that ground it would be necessary to show that such violation directly or proximately contributed to the accident and resulting injuries." (*Ingram* v. *Wessendorf,* 14 Cal.App.2d 16, 21 [57 P.2d 989]; see, also, *Nunneley* v. *Edgar Hotel,* 36 Cal.2d 493 [225 P.2d 497].) Contributory negligence is an affirmative defense which is waived unless pleaded, and having pleaded the same the party so pleading has the burden of proving his allegations in respect thereto.

 There is nothing in the record from which we can tell with any sort of exactitude how far it was from the stop sign to the limit line or how far it was from the limit line to the traveled portion of Highway 12. These are important matters, for if, as is usually the practice where the terrain will permit, the stop sign and the limit line are for all practical purposes at the same point, then whether the respondent stopped at one or the other would have no causal connection with the accident. Respondent testified that he stopped at the stop sign at which point he could see to the top of the rise; that at the time of the trial there was a limit line further along the road but he couldn't remember seeing it there at the time of the accident; that his car traveled about 30 feet from the stop sign to the point of impact; that he estimated it was 6 or 8 feet from the stop sign to the "white stop on the pavement"; that his front wheels, when he stopped, were about even with the upright

stop sign. Another witness, a patrol officer, testified that he had examined the area at the intersection; that he didn't know whether or not there was a line on the highway at the time of the accident, but that there was one there at the time of the trial and that it was "back where the post is"; that it had been changed since the accident. Recalled, respondent further testified that at the time of the accident the line was right up close to the main highway. When asked about how many feet from the highway, he said "It is about 6 feet but the old line was right up against the highway, the other was 6 feet back." We think it apparent from the whole record that the trial court, on the question of proximate cause here being discussed, was confronted with a factual situation, and could have inferred from all of the facts that the accident would have occurred even though the statute had been strictly observed; that the issue could not have been decided as a matter of law and that therefore the determination of the trial court is binding upon this court.

■ Appellants moved the trial court for a new trial of the action, which motion was denied, and they now contend that the court erred in so ruling. It appeared by affidavit in support of the motion for new trial that an insurance company had paid respondent the sum of $1,255 in compensation for the "total loss" of the pickup truck involved in the accident. Appellants argue that since respondent had been paid in full by the insurance company he was no longer the owner of the cause of action against them. The point is without merit. (See *Lebet* v. *Cappobiancho*, 38 Cal.App.2d Supp. 771 [102 P.2d 1109]; *Anheuser-Busch, Inc.* v. *Starley,* 28 Cal.2d 347 [170 P.2d 448, 166 A.L.R. 198].)

The judgment appealed from is affirmed.

Adams, P. J., and Peek, J., concurred.