[Civ. No. 16711. First Dist., Div. One. June 19, 1956.]

DOLORES IRENE PROVOST et al., Respondents, v.
RICHARD OWEN WORRALL, Appellant.

James P. Shovlin, Jr., for Appellant.

Philander Brooks Beadle and Abraham Setzer for Respondents.

BRAY, J.—Defendant appeals from a judgment on jury verdicts granting plaintiff Dolores $2,000 and plaintiff George $250 and from the order granting new trial on damages *alone.*

### QUESTIONS PRESENTED

1. Were plaintiffs under Washington law guests or passengers for pay in defendant's car?

2. Was contributory negligence an issue?

3. Alleged errors in exclusion of defendant's reason for trip.

4. Was new trial on issue of damages only, an abuse of discretion?

## FACTS

Plaintiff George and defendant were both on active duty in the United States Marine Corps and were stationed at Bremerton, Washington, sleeping in the same room at the barracks. They had served together in the same company in Korea, sharing the same tent when in the rear areas. They had returned together on the same ship. Plaintiffs Dolores and George planned to get married at Bremerton on October 18th. Plaintiff George asked defendant to be best man at the wedding. On October 17th plaintiffs discovered that they could not marry the next day, as Washington had a three-day waiting law and they had neglected to obtain a license. Meeting defendant that evening, they discussed their predicament with him. The suggestion was made that plaintiffs could get married in Idaho without a waiting period. There is a conflict as to whether one of the plaintiffs or the defendant made the suggestion. Defendant owned an automobile. Plaintiffs did not. Defendant had only $7.00 or $8.00 at the time. It was agreed that if plaintiffs would pay the expenses or part of the expenses, defendant would drive them to Idaho. Defendant previously had not been to Idaho. He had no friends or relatives there and had not planned on going there. "I said that I . . . would take them considering that we were good friends and had known each other for quite some time." Plaintiff George paid the expenses of the trip such as gas and oil, food, and bridge toll.

The trip started from Bremerton by ferry about 11:55 p. m. Defendant's car then contained about a full tank of gasoline for which he received no reimbursement. Arriving at Seattle, defendant drove the car some 65 miles to Easton, Washington. There plaintiff George took over the driving, while defendant slept. About 6:30 a. m. they reached Ritzville, Washington. Here the party had breakfast. Between 7:15 and 7:30 a. m. they left Ritzville, defendant driving. Both plaintiffs went to sleep. About 45 minutes later, while still in Washington, the car ran off the road and overturned. Plaintiff George woke up as the car was running off the road. Defendant "seemed to be grappling with the wheel as if he was trying to bring it under control . . ." Defendant was unable to give any explanation for the accident. Although he did not feel sleepy he did not know whether or

not he fell asleep. There was a possibility that defendant may have suffered retrograde amnesia as a result of the accident. The evidence was conflicting as to whether the car was being driven 60-70 or 45-50 miles an hour at the time of the accident.

1. *Guest or Passenger.*

 Although this action was filed in the San Francisco Superior Court, it is governed by the laws of Washington, the jurisdiction where the tort, if any, was committed. (See *Loranger* v. *Nadeau*, 215 Cal. 362, 366 [10 P.2d 63, 84 A.L.R. 1264].) Matters of procedure, however, are governed by the laws of the forum. (*Klaffki* v. *Kaufman*, 52 Cal.App. 48, 50 [198 P. 36].) Defendant moved for a nonsuit which was denied. He also moved for a new trial. His motion was denied. The court, however, granted plaintiffs' motion for new trial on damages alone.

Defendant contends that as a matter of law under the Washington statute plaintiffs were guests and not passengers and hence the nonsuit and his motion for new trial should have been granted.

The Washington "guest statute" reads as follows: "46.08.080. Liability of host for injury to guest in motor vehicle. No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless the accident was intentional on the part of the owner or operator: *Provided*, That this section shall not relieve any owner or operator of a motor vehicle from liability while it is being demonstrated to a prospective purchaser." (1937, ch. 189, § 121; RRS § 6360-121.)

The Washington courts have upheld the validity of this statute, and have stated its purpose to be the prevention of collusive suits to defraud a defendant's insurance carrier. (*Shea* v. *Olson* (1936), 185 Wash. 143 [53 P.2d 615, 620, 111 A.L.R. 998]; *Upchurch* v. *Hubbard* (1947), 29 Wn.2d 559 [188 P.2d 82, 86].)

Interpretation of the statute is the major problem, and it focuses upon the meaning of the word "payment," because the presence or lack of payment determines whether a person riding in the automobile of another falls into the category of a "guest or licensee" or otherwise.

No Washington cases have been cited, nor have we found any, with facts substantially similar to this case. The interpretation of the statute must therefore be made upon a basis of how it is believed, from a reading of the existing Washington cases, the Washington court would interpret it.

Generally, the Washington cases hold that in order to show "payment for such transportation" two requirements are necessary: (1) an actual or potential benefit in a material or business sense resulting or to result to the owner, and (2) ". . . that the transportation . . . [be] motivated by the expectation of such benefit." (*Fuller* v. *Tucker*, 4 Wn.2d 426 [103 P.2d 1086, 1088].) The expectation of receiving such benefit need not be the sole motivating factor. (*McUne* v. *Fuqua*, 42 Wn.2d 65 [253 P.2d 632].)[1]

A review of the Washington cases shows that primarily the determination of whether the invitee in an automobile who contributes towards its operation is considered a guest "without payment" is a matter for the jury's determination. See *Parrish* v. *Ash*, 32 Wn.2d 637 [203 P.2d 330], where the plaintiff who requested to ride home with the defendant paid the defendant a dime for the ride. In upholding the jury's finding that this was "payment" the court said (p. 338 [203 P.2d]) : "It is for the jury to determine, from the evidence and upon proper instructions by the court, whether an amount paid, an article of property furnished, or a thing done was intended by the parties concerned as compensation for the transportation . . . or whether on the contrary the consideration or benefit was proffered and accepted merely as a gratuity or expression of appreciation for a favor extended." See also *McUne* v. *Fuqua, supra,* 253 P.2d 632, where the court said (p. 636) : ". . . where it has been shown that the passenger contributed, or promised to contribute, to the actual expenses of the trip, then, notwithstanding the fact that the trip was solely for social purposes, we have held that it is for the trier of the facts to find whether

---

[1]This is similar to the rule in California. ''Under these cases there can be no doubt that the courts have now applied the tangible benefit rule to social journeys. Under these cases, 'compensation' can be found if there is an intent to receive compensation or if there is the conferring of an actual tangible substantial benefit on the driver where the benefit conferred is at least 'a' motivating influence for taking the trip. But the Whitmore case expressly excluded 'extending customary courtesies of the road' from the category of tangible benefits, and reaffirmed the 'exchange of social amenities' rule stated in *McCann* v. *Hoffman, supra* [9 Cal.2d 279 (70 P.2d 909)].'' (*Brandis* v. *Goldanski,* 117 Cal.App.2d 42, 49 [255 P.2d 36].)

such contribution constitutes an actual or potential benefit in a material or business sense.''[2]

Applying the Washington rule to the facts of this case it is clear that it cannot be said as a matter of law that defendant was to receive ''payment for such transportation'' in the sense required. The jury could have found either that the trip was purely a social one in which defendant through friendship offered to help his friend out of a predicament by supplying transportation, but because of lack of finances required the cost of the trip to be borne by the latter, or one in which a substantial motive was a trip for himself to a place he had never seen financed by the other.[3] The court properly left to the jury the question of the motivation for the trip.

2. *Contributory Negligence.*

Defendant contends that because plaintiffs planned a trip of some 600-700 miles to be completed in less than 24 hours, driving all night and all day, and were asleep at or immediately prior to the time of the accident, there was evidence of contributory negligence to go to the jury. Toward the end of the trial defendant moved for permission to file a supplementary answer on contributory negligence to conform to the proof (contributory negligence had not theretofore been pleaded). The court granted permission, expressly reserving the right to determine before instructing on the subject whether there was any evidence of such negligence. No

---

[2] It is unnecessary to detail the holdings in the various Washington cases deaing with the subject. Each case depends upon the particular facts and upon whether the jury felt that the invitation to ride was due to the expectancy by the invitor of a substantial business benefit or a tangible advantage or whether the invitor was motivated by friendship or the social amenities. Washington cases holding that the invitee was a guest without payment are *Syverson* v. *Berg* (1938), 194 Wash. 8 [77 P.2d 382], mother riding as chaperon of daughter and driver; *Fuller* v. *Tucker, supra,* 103 P.2d 1086, the plaintiff asked the defendant for a ride to a football game; *Pratt* v. *Strever,* 39 Wn.2d 515 [236 P.2d 779], complaint failed to allege facts showing payment; *McUne* v. *Fuqua, supra,* 253 P.2d 632, comembers of a lodge drill team going to a state convention and sharing cost of gasoline; *Hayes* v. *Brower* (1951), 39 Wn.2d 372 [235 P.2d 482], invitees had missed their bus and requested invitor to drive them to their destination, they offering to pay for some gas.

Those holding invitee to be a paying guest are *Parrish* v. *Ash, supra,* 203 P.2d 330, dime paid for the ride; *Peterson* v. *Thorvaldsen* (1954), 45 Wn.2d 376 [274 P.2d 844], fishing boat crew members riding in a member's car to jointly protest amount of their paychecks; *Scholz* v. *Leuer* (1941), 7 Wn.2d 76 [109 P.2d 294], invitee rode to help invitor deliver newspapers.

[3] The jury impliedly found the latter motive to be the true one.

supplementary answer was filed. The court refused to give defendant's offered instructions on the subject, but instructed that there was no issue of contributory negligence in the case. Upon motion for new trial defendant requested permission to file the amendment in accordance with the previous order. This was denied. ■ It is well settled that contributory negligence to be an issue must be pleaded. (*Rhodes v. Amor*, 119 Cal.App.2d 98, 101 [259 P.2d 35].) It is waived unless pleaded. (*Greene v. M. & S. Lbr. Co.*, 108 Cal.App. 2d 6, 10 [238 P.2d 87].)

■ "It is a general rule that mere leave to amend does not in itself operate as an amendment, and if a formal amendment is not filed the issue is not properly pleaded. (*Central Cal. Creditors' Assn. v. Seeley*, 91 Cal.App. 327 [267 P. 138] ; see cases collected in 49 C.J. p. 548, 549.) It is true that where the motion to amend is made during the trial and thereafter the case is tried as if the amendment had been made, the parties by their actions are estopped and cannot later complain that no formal amendment was in fact made." (*Conroy v. Perez*, 64 Cal.App.2d 217, 228 [148 P.2d 680].)

■ Regardless of pleading, however, the court was right in instructing that there was no issue of contributory negligence. If the jury were to find that plaintiffs were merely guests of defendant, then plaintiffs under the Washington law would have no cause of action against defendant, and hence there could be no issue of contributory negligence. If, on the other hand, the jury were to find that they were paying guests, defendant then owed to them the highest degree of care, in which event they would be entitled to sleep and to leave the driving of the car entirely to defendant unless something should occur to warn them that defendant was not exercising such degree of care. In view of that degree of care required of defendant there was no evidence of contributory negligence on the part of plaintiffs.

3. *Defendant's Reason for the Trip.*

■ As we have pointed out, the motivation for the trip was of primary importance. Therefore defendant was entitled to give his reasons for taking it. The court sustained an objection to a question asked defendant as to why he agreed to take plaintiffs to Idaho. The question should have been allowed. However, it appears that the error was harmless, as defendant had already testified that when asked by plaintiffs if he would take them he stated that he would

"considering that we were good friends and had known each other for quite some time." Defendant also testified: "I considered we had known each other for quite some time, and we were fairly good friends."[4]

### 4. New Trial.

There can be no question but that the jury verdicts were compromise ones. The question of liability, that is, whether the motivation for the trip was the expectation of receipt by defendant of the expenses of the trip or a friendly gesture to enable the plaintiffs to get married immediately, was a close one,[5] and the injuries received by plaintiffs in the action were serious. Defendant introduced no medical testimony. Plaintiffs offered the testimony of a doctor and the records of the hospitals in which plaintiffs respectively were hospitalized as a result of the accident. Dolores' injury resulted in the removal of a kidney, severe injury to the ligaments of her back which were still so painful at the time of the trial she could not bend backwards, some superficial scars on her chest and some large permanent scars on her leg that were ugly, deforming and painful, persistent inflammation of the bladder which caused her to urinate about every 30 minutes, dizziness and headaches continuing to the time of trial. No effort was made to contradict the testimony of the doctor that these conditions resulted from the accident, other than to question the doctor as to whether the pain in the back and the inflammation of the bladder were not attributable to conditions resulting from prior pelvic inflammatory disease or diseases. The doctor denied that they were and there was no evidence that they were. Dolores was confined to the hospital for 11 days. Her special damages were about $1,343.33. The jury allowed her a total sum of $2,000, or about $656.67 for general damages. No wonder the court stated that the damages were "wholly inadequate" and "the amount of damages awarded was the result of a compromise."[6]

Plaintiff George's injuries were not as serious as those of Dolores. His right knee was injured. It was diagnosed at the Fairchild, Washington, Air Force Base Hospital, where he was confined for 9 days, as an impaired medial cartilage

[4]The error might have been serious had defendant made an offer of proof showing other reasons than those disclosed.

[5]Even though the court in its "Order Granting New Trial on Single Issue of Damages" stated that as a matter of law plaintiffs were guests for pay. Actually, however, the court left this question to the jury.

[6]See "Order Granting New Trial on Single Issue of Damages."

tear. Thereafter for approximately three months he was confined in the United States Naval Hospital at Bremerton, Washington. His knee was then in a cast. The record shows that plaintiff's complaints and "all other objective signs pointed to a tearing of the medial collateral ligament." About 15 days later this diagnosis was changed to sprain. His knee remained in a cast for approximately another 40 days. A few days later he was discharged as fit for duty. A couple of months later his enlistment in the Marines expired. He was examined by Navy doctors, pronounced fit for duty, and re-enlisted. He has had headaches and occasionally dizzy spells which the doctor related to the accident. He has persistent pain in his knee on walking or standing. The doctor diagnosed his present condition as a "derangement of the knee," an injury which has not healed. He finally became nervous and was confined to Oak Knoll Hospital for several months, all of which the doctor ascribed to the effects of the accident. There is no contradiction of the doctor's testimony, defendant contenting himself with claiming that the Navy doctors' diagnosis of a sprain and his reenlistment in the Marines contradicts that testimony. However, there is no evidence that his present condition is not as testified to and since his reenlistment he was in the hospital for several months. Because he received government medical care his special damage was only $2.50. The jury awarded him $250, or $247.50 general damages. Obviously, this sum is grossly inadequate. The jury were out seven hours. The only instructions they requested be read again were those explaining the Washington guest statute. The awards to both plaintiffs can be explained only upon the grounds of compromise.

"It has been declared, however, that where the plaintiff has requested a new trial on the issue of damages alone the question of limiting a new trial to that issue is a 'very serious one.' A limited new trial should not be granted, where substantial justice requires that a new trial, if granted at all, should cover all the issues." (*Keogh* v. *Maulding*, 52 Cal. App.2d 17, 19 [125 P.2d 858] ; see also *Bencich* v. *Market St. Ry. Co.*, 20 Cal.App.2d 518, 528-529 [67 P.2d 398].)

In *Leipert* v. *Honold*, 39 Cal.2d 462 [247 P.2d 324, 29 A.L.R.2d 1185], the court sets forth the rule concerning review of a trial court's decision limiting a new trial. After pointing out that such a decision rests in the discretion of the trial judge and will be reversed only in the event of an abuse of that discretion, the court said (p. 467) : "Such an abuse is

shown when the damages are inadequate, the record discloses that the issue of liability is close, and other circumstances indicate that the verdict was probably the result of prejudice, sympathy, or compromise or that for some other reason the liability issue has not actually been determined.'' See also *Rose* v. *Melody Lane,* 39 Cal.2d 481 [247 P.2d 335], where the court held that where the damages are completely inadequate a conclusion contrary to one finding that the verdict was a compromise is only justified when the evidence of defendant's negligence is ''overwhelming.'' (P. 489.) The court also pointed out that the fact that the jury, after deliberating three hours, returned for a reading of the testimony of one of the liability witnesses, showed that it was having difficulty in determining whether or not the defendant was negligent, and in the light of the gross inadequacy of the award, was a circumstance supporting the conclusion that the verdict was the result of a compromise. In our case, the jury wanted to be further enlightened on the Washington guest statute. See also *Cary* v. *Wentzel,* 39 Cal.2d 491 [247 P.2d 341]. See also *Hamasaki* v. *Flotho,* 39 Cal.2d 602 [248 P.2d 910], where the court said (p. 607): ''As a general rule, it is only when the verdict allows a substantial, even though inadequate, amount for general damages that it can reasonably be concluded that the jury's error related solely to the damages issue.''

In view of the closeness of the question of the status of plaintiffs in the automobile, the lack of substantial verdicts, the request of the jury, and the other circumstances in the case, it is clear that the jury's verdicts were compromise ones, and therefore the new trial should not have been a limited one.

Plaintiffs cite as applying here the language in *Cox* v. *Tyrone Power Enterprises,* 49 Cal.App.2d 383, 390 [121 P.2d 829]: ''. . . merely because we regard the award as too low we must also infer that jurors stultified themselves by bargaining inadequate damages for unjustified liability is a *non sequitur.*'' That case differs from ours in this: (1) The court held that the jury correctly determined the negligence issues but apparently did not consider that those issues presented a close question. (2) ''. . . there was substantial contest as to the extent (permanence) of plaintiff's injuries.'' (P. 390.) Although the court believed the damages to be inadequate it stated: ''. . . we do not find that it is such as to justify us in concluding, contrary to the trial judge, that the jury *compromised the question of negligence* by its inade-

quate award of damages." (P. 390.) It should be pointed out further that the Cox case is one of those considered (but not discussed) in *Leipert* v. *Honold, supra,* 39 Cal.2d 462, 467.

Defendant has appealed not only from the order granting a limited new trial but also from the judgment. Since defendant's liability has never been properly determined, the judgment must be reversed.

The judgment and order are reversed. Each side shall bear its own costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 16, 1956. Carter, J., was of the opinion that the petition should be granted.