[Civ. No. 36074. Second Dist., Div. Two. Sept. 16, 1970.]

FRANK P. DONOVAN, Plaintiff and Respondent, v.
ALVIN WECHSLER, Defendant and Appellant.

**COUNSEL**

Lyn H. Marcus for Defendant and Appellant.

Kenneth S. Biely for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—Respondent Frank P. Donovan, on May 3, 1966, through the efforts of one Salmonson, an independent salesman, executed a written contract with Venco Construction Company, a corporation (Venco) for the conditional sale of four items of construction equipment totaling in value, including finance charges, the sum of $26,742.39 (Sale). Appellant Wech-

sler, an attorney who defended the action in the trial court, held 47½ percent of the issued capital stock of Venco.

Prior to the consummation of the sale, Wechsler was told by Salmonson that Donovan intended to assign the Sale to Industrial Credit Company (Industrial) and that there could be no sale unless Wechsler executed a personal guaranty of the Sale. Since one of the basic points relied on by Wechsler (appellant herein) is bottomed on the manner in which the Sale was consummated, the testimony of Salmonson on cross-examination by Wechsler and undenied by Wechsler, is detailed in pertinent part:

". . . [T]he conditional sales contract was signed by Mr. Fuller[1] in my presence. At that time I advised him that Industrial . . . would require a personal signature by Mr. Wechsler, and at that time, I had those forms,[2] and then I made an appointment with Mr. Wechsler to have that personal guaranty signed.

"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

". . . I advised him that it was necessary for Mr. Wechsler to sign a personal guaranty, and then, at that time, I made an appointment with Mr. Wechsler. THE COURT: Was this before the equipment was delivered? THE WITNESS: Yes, sir. THE COURT: Was the guaranty signed before the equipment was delivered? THE WITNESS: Yes, sir. THE COURT: And delivered to Venco? THE WITNESS: Yes, sir. THE COURT: Then, in your discussions with Mr. Fuller, was it a condition that Mr. Wechsler sign a guaranty prior to acceptance with—of the sale or the contract, is that your testimony? THE WITNESS: Yes, sir."

Wechsler did, on May 6, 1966, prior to the delivery of said items of equipment, execute a written guaranty to Industrial. The guaranty did specifically guaranty all the terms of the sale and in pertinent part it provided that it was to "your successor or assigns. . . ." Donovan assigned the Sale to Industrial with recourse. It is not clear from the record whether the Wechsler guaranty was delivered at the same time to Industrial by Donovan or sent directly to Industrial by Wechsler. Since Wechsler had only a vague recollection of executing the guaranty, although he admitted his signature, it is fair to assume that it was delivered to Salmonson, as he in effect testified and that both documents were then delivered to Donovan who in turn delivered them to Industrial.

Within two months Venco defaulted. Donovan continued payments due

---

[1]Fuller signed as President of Venco. Wechsler testified he was the General Manager.

[2]The forms were contract of conditional sale with Donovan and guaranty thereof running to Industrial, both of which were introduced in evidence.

from Venco under the sale for a few months and then discontinued. Venco continued in default. Industrial declared a default, repossessed the equipment and reassigned the sale to Donovan together with the equipment collateral and the Wechsler guaranty. Donovan thereafter, as required by and pursuant to the terms of the contract and section 9504 of the Commercial Code of California, sold the equipment at private sale. Donovan then brought this action against Wechsler on the guaranty for a sum equal to the difference beween the price fixed in the sale and the price obtained at the private sale, plus interest, repossession charges, commissions and attorneys' fees, all included in the guaranty by Wechsler. Donovan obtained judgment. Wechsler appeals.

Donovan's amended complaint did not allege an assignment from Industrial to himself, nor did he introduce evidence of the assignment or that proper notice of the private sale of the equipment had been given when he first rested his case. These omissions were called to the court's attention by Wechsler who at that stage of the litigation moved for a nonsuit or dismissal on the ground that the action had been prematurely brought and that the complaint stated no cause of action against him. Donovan promptly asked leave to reopen to supply the missing evidence to amend his complaint. The court granted the motion to reopen and amend. The case was reopened and evidence of assignment, notice of sale and proper adherence to Commercial Code section 9504 were supplied, although the record shows that the assignment from Industrial to Donovan was not completed until a month after the original complaint was filed. The record also shows that although granted leave to amend, to conform to proof, no amendment was actually filed. The case was reopened and tried on the theory that a formal amendment to conform to proof would be filed. Since the proof was made, the fact that no formal amendment was filed is immaterial. (*Provost* v. *Worrall,* 142 Cal.App.2d 367, 373 [298 P.2d 726]; 39 Cal.Jur.2d 353.) The findings made by the trial court are supported by ample evidence. In pertinent part the findings are as follows:

"2. On May 6, 1966 [Wechsler] executed a guaranty to Industrial Credit Company on behalf of Venco, providing that he would guarantee to Industrial Credit Company or its assigns the performance of the said conditional sales contract.

". . . . . . . . . . . . . . . . . .

"7. That the said equipment was not delivered to Venco until [Wechsler] executed his guaranty and was delivered in consequence of said guaranty.

"8. That [Donovan] sold said equipment to Piper Machinery Company

for $10,500.00 after having advertised it for sale and attempting to sell the same on the open market.

"9. That [Donovan] through his attorney and [Wechsler] on his own behalf stipulated that proper notice of the sale of the collateral was given."

The court's conclusions of law in pertinent part were:

"1. That there was consideration for [Wechsler's] guaranty.

"2. That the sale of said equipment by [Donovan] to Piper Machinery Company was made in a commercially reasonable manner.

"3. That proper notice of the sale of the collateral was given.

". . . . . . . . . . . . . . . . . ."

■ Wechsler argues that the action was prematurely filed; his guaranty was without consideration or in the alternative, that Donovan could not collect on the guaranty because (a) it ran to Industrial and (b) Industrial was not hurt because it recovered in full from Donovan the consideration it had paid Donovan for the sale; no proper notice of sale was given as required by section 9504, subdivision (5), of the Commercial Code of California; that the sale was not made in a commercially reasonable manner as required by said code section, and finally, that the assignment to Donovan by Industrial of the guaranty did not give Donovan the right to sue thereon, since he had parted with the debt which was the subject of the guaranty.

The premature filing of the original complaint was cured by the assignment from Industrial to Donovan shown by the evidence and found by the court to have been made a month after the action was filed. (*Loop Bldg. Co.* v. *DeCoo,* 3 Cal.App.2d 129, 134-135 [38 P.2d 816]; *Meyer Koulish Co.* v. *Cannon,* 213 Cal.App.2d 419, 425 [28 Cal.Rptr. 757]; *Baumgarten* v. *California Pac. Title & Trust Co.,* 127 Cal.App. 649 [16 P.2d 332].)

Finally, the record shows that the tardy assignment of contractual rights represented by the Sale and the guaranty of that Sale were vested in Donovan at the time of trial and the court so found. ■ The trial court specifically concluded that Donovan ". . . has the same rights as [Industrial] under the conditional sales contract." The trial court's conclusion is further fortified by section 9504, subdivision (5), of the Commercial Code which provides: "A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. . . ." (*Offer* v. *Superior Court,* 194 Cal. 114, 121 [228 P. 11].)

■ The evidence shows and the court found that no Sale would have

been consummated except for the Wechsler guaranty. Assuming the guaranty as Wechsler contends was executed a few days later, and not concurrently with the sale, an assumption contrary to the evidence and the findings of the trial court, there was ample consideration for the guaranty. (Cal.Jur.2d, Suretyship and Guaranty, § 22; *Pauly* v. *Murray,* 110 Cal. 13 [42 P. 313]; *Stroud* v. *Thomas,* 139 Cal. 274 [72 P. 1008].) *Sherwood* v. *Lowell,* 34 Cal.App. 365 [167 P. 554], cited by Wechsler, is not in point. The facts at bench show the guaranty was an intrinsic part of the Sale. The guaranty was made to Industrial and its assigns. Wechsler cites no case and we know of none which prevents the assignment of a guaranty.

The fact that Industrial was not damaged because it recovered its purchase price from Donovan does not prevent Donovan from recovering on the Sale. The recourse arrangement between Donovan and Industrial required Donovan to take the Sale back from Industrial. Donovan was in precisely the same position as Industrial.

The parties stipulated that proper notice of the private Sale was given.[3] The trial court so found and concluded also from evidence too full to detail, that the Sale was made in a commercially reasonable manner, as required by section 9504, subdivision (3), of the California Commercial Code.

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied October 6, 1970, and appellant's petition for a hearing by the Supreme Court was denied November 10, 1970.

---

[3]Speaking in respect of the notice, Mr. Wechsler stated after evidence thereof had been introduced, as follows:

"I was unaware of this evidence, . . . and I am willing to stipulate that it was given. THE COURT: As required by Section 9504? MR. WECHSLER: That's correct, your Honor."