Filed 11/18/20

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BERND REUTER, | B298265 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NC061570) |
| v. | |
| CLAUDIA L. MACAL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Michael P. Vicencia, Judge. Affirmed.

Albert S. Israel and Bruce A. Dybens for Defendant and Appellant.

Law Office of Thomas Armstrong, Thomas Armstrong for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion parts B through E.

# I.    INTRODUCTION

In May 2005, plaintiff Bernd Reuter executed a deed granting defendant Claudia L. Macal a joint interest in his condominium.  In January 2018, plaintiff sued defendant seeking to quiet title to the condominium in his favor.  At trial, plaintiff argued, among other things, that the deed should be rescinded under Civil Code section 1590 (section 1590) as a gift made in contemplation of marriage.  The trial court ruled in favor of plaintiff on the quiet title claim and entered a judgment requiring defendant to reconvey title.

On appeal, defendant raises several contentions, including claims of error based on the statute of limitations, the conclusive presumption established by Evidence Code section 622, the sufficiency of the evidence in support of the quiet title claim, waiver and estoppel, and an abuse of discretion in allowing an amendment to the quiet title claim to conform to proof.  In the published portion of this opinion, we hold that the tolling rule in *Muktarian v. Barmby* (1965) 63 Cal.2d 558, 560 (*Muktarian*) applies to defendant's statute of limitations defense and applies in the context of plaintiff's claim for relief under section 1590.  In the unpublished portion, we reject defendant's other challenges to the quiet title judgment and therefore affirm that judgment.

## II.    FACTUAL BACKGROUND

A.    *Plaintiff's Testimony*

At the time of trial, plaintiff was 64 years old and defendant was 45. In early 2004, the parties became involved in a romantic relationship, and by the middle of 2004, defendant and her youngest daughter moved into plaintiff's condominium.[1]

Sometime between the middle and end of 2004, the parties discussed marriage. Plaintiff told defendant that he wanted to marry her, and she agreed, but on the condition that her name be placed on title to his condominium. Defendant continued "pushing for" her name to be on title until plaintiff agreed.

On May 16, 2005, plaintiff and defendant went to a notary public before whom plaintiff executed a grant deed conveying to defendant a joint interest in his condominium. The form deed contained a printed recital which read, "For a valuable consideration, receipt of which is hereby acknowledged . . . ." But it also had the notary's handwritten notation that read, "This is a bona[ ]fide gift, and grantor received nothing in return - - R&T 11911."[2] Notwithstanding the notation, plaintiff "expected something in return," namely, marriage, and made that expectation clear to defendant.

---

[1]    Defendant also had an older daughter who lived in El Salvador at the time.

[2]    Revenue and Taxation Code section 11911 authorizes counties to impose a tax on the deeds, instruments, and writings by which real property is sold within the county.

3

In 2011, defendant disclosed to plaintiff that she was pregnant by another man and intended to keep the child. Plaintiff responded, "'Okay, if that's your decision, then you have to leave.'" Defendant agreed to move out, but asked plaintiff to "'give [her] some time, about a year.'" Although plaintiff acquiesced, he understood that the relationship was over because the parties "had separate bedrooms, and [they] didn't really talk [that] much to each [other] . . . ." By that time, it was clear to him that defendant would not be able to carry out her promise of marriage.

During the following year, defendant's son was born, and despite defendant's promise to move out, she continued to live in the condominium through and including the time of trial. Plaintiff did not take any legal action against defendant because she "always asked for more time" to move out. Defendant explained that she needed more time to find a new "boyfriend," and left her children with plaintiff while she went out on weekends "looking for boyfriends."

Following the breakup in 2011, plaintiff continued to give defendant between $6,000 and $7,000 a month, totaling over $250,000. In plaintiff's view, the amounts that he gave to defendant were a down payment to recover the interest in the condominium that he had deeded to her. According to plaintiff, defendant agreed to accept the money as a down payment, but also stated that she had "no interest" in the condominium; she just wanted a place to live. This went "on and on until [plaintiff] just finally couldn't take it anymore, and [he] had to take some legal steps."

B.    *Defendant's Testimony*

Defendant testified that when she moved in with plaintiff in 2004, he told her that he wanted to marry her, and in approximately December 2004, defendant agreed to marry him. She again agreed to marry plaintiff in 2009 when her oldest daughter moved from El Salvador to live with them and attend middle school.

According to defendant, she asked plaintiff to put her on title because she "wanted security for [her] daughters. [She and plaintiff] had been together practically for a whole year . . . ." She went to the notary with plaintiff in May 2005 because he wanted to give her a joint interest in his condominium as a gift. But, according to defendant, she and plaintiff did not discuss marriage at that time.

Following the transfer of title, defendant assumed that plaintiff would, and he did, continue to pay the mortgage, the property taxes, and the maintenance and repair expenses on the property, as she had not worked since she moved to the United States approximately 17 years earlier. The parties' financial arrangement was consistent with defendant's understanding that she would live together with plaintiff in one household to raise the children.

When defendant became pregnant in 2011, plaintiff asked her to return the property to him. She refused because "it was a gift."

After defendant's son was born, she and plaintiff did not often talk about her interest in the property because plaintiff "loved [her] son . . . ." On the occasions between 2011 and 2018 when they did talk about her interest, she told plaintiff "all [she]

5

needed was [her] bedroom . . . [, but that the interest in the condominium] was a gift.  [And she asked why she would] have to give it back?"  According to defendant, the couple never married because plaintiff no longer wanted to marry her.  She acknowledged that by 2011, "[t]he relationship was over."

### III.   PROCEDURAL BACKGROUND

On January 8, 2018, plaintiff filed a complaint against defendant asserting three causes of action, including the first cause of action to quiet title and remove cloud on title to real property by cancellation of an instrument.[3]  According to the complaint, the May 2005 grant deed was procured by undue influence and for inadequate consideration, as plaintiff received nothing of value in exchange for the deed.

In his brief filed on the day of trial, plaintiff explained that, in addition to seeking cancellation of the May 2005 deed based on undue influence and lack of consideration, he also sought to rescind the deed as a gift in contemplation of marriage under section 1590.

At the beginning of trial, plaintiff's counsel referred to a "discussion we had with the court this morning concerning the issues that would be germane in this case," and stated that the evidence at trial would be focused on the issue of whether "the marriage was contemplated and whether the donee refuse[d] to

---

[3]    The second and third causes of action alleged common counts for money had and received and money paid.  The trial court granted judgment in favor of defendant on those two claims, and plaintiff did not cross-appeal from that portion of the judgment.

enter into marriage as contemplated or that it's given up by mutual consent of the parties."[4]

At the close of evidence, plaintiff moved to amend the first cause of action, the quiet title claim, to conform to proof at trial. As plaintiff's counsel explained, based on the evidence at trial, plaintiff sought to "add an allegation that the deed was . . . provided as a gift in contemplation of marriage." The trial court asked, "Under . . . section 1590?" Counsel responded, "Correct."

Defendant objected, claiming the proposed amendment was untimely and prejudicial because defendant did not depose plaintiff "on it." The trial court disagreed with defendant's characterization and concluded that based on its review of portions of plaintiff's deposition, defendant had asked questions on the topic.[5] The court granted the motion to amend to conform to proof.

Following closing arguments, the trial court took the matter under submission and subsequently issued a written ruling. On the statute of limitations, the court ruled as follows: "Defendant insists that plaintiff's claim to quiet title is barred by the statute of limitations. As defendant would have it, the statute began to run in 2011, when the romantic relationship ended, and had long expired by the filing of the complaint in January of 2018. However, the statute of limitations 'does not run against one in possession of land.' [*Salazar v. Thomas*]

---

[4] The record does not include a transcript of a discussion between the court and the parties on the morning of trial.

[5] A transcript of plaintiff's deposition was provided to the court for its review during trial. But the transcript is not part of the record on appeal.

7

(2015) 236 Cal.App.4th 467, 477 [(*Salazar*)]; [*Muktarian, supra,*] 63 Cal.2d [at p.] 560; [*Crestmar Owners Assn. v. Stapakis*] (2007) 157 Cal.App.4th 1223, 1228 [(*Crestmar*)].  [Plaintiff] never relinquished possession of the premises."

Where the parties' testimony diverged on the reason for the gift, the trial court found "[plaintiff] to be more credible.  His demeanor and attitude toward[ ] testifying appeared honest and forthright.  [Defendant], on the other hand, appeared less credible to the court."

The trial court ruled that "plaintiff should succeed on his first cause of action and defendant succeeds on the second and third causes [of action]."  The court thereafter entered a judgment in conformance with its ruling, declaring that defendant held title to the condominium in constructive trust for the benefit of plaintiff and ordering her to reconvey that title to plaintiff. Defendant filed a timely notice of appeal from the judgment.

## IV.   DISCUSSION

A.    *Statute of Limitations*

1.    The *Muktarian* Tolling Rule

Defendant contends that the trial court erred by applying the tolling rule in the Supreme Court's decision in *Muktarian, supra,* 63 Cal.2d 558 and concluding that no statute of limitations had run against plaintiff's action to recover full title to the property.  According to defendant, the court should have followed the more closely analogous Court of Appeal decision in *Ankoanda v. Walker-Smith* (1996) 44 Cal.App.4th 610 (*Ankoanda*) and

8

concluded that plaintiff's quiet title claim was barred by the three-year limitations period in Code of Civil Procedure section 338 (section 338). We disagree.

In *Muktarian, supra*, 63 Cal.2d 558, when the 75-year-old plaintiff decided to marry a second time, his son, the defendant, convinced his father to deed the disputed property to him[6] to prevent the second wife from acquiring an interest in it. (*Ibid.*) The son gave no consideration for the deed, made no false promises with respect to the deed, and did not exert any duress or undue influence on the father. (*Ibid.*) But the deed and the son's recording of it were contrary to "'the intentions in the mind of [the father] at the time of executing [the] deed.'" (*Ibid.*) The day after the father executed the deed, he met with a lawyer and discovered his error. (*Ibid.*)

At all times after he executed the deed, the father remained in possession of the property and paid the taxes on it. (*Muktarian, supra*, 63 Cal.2d at pp. 559–560.) Several years after executing the deed, the father spoke to another lawyer about clarifying his rights under the deed, but again took no action. (*Id.* at p. 560.) When the father thereafter decided to sell three acres of his property, the son signed the necessary grant deed. (*Ibid.*) But when the son subsequently refused to agree to a proposed sale of an additional 52 acres, the father filed a quiet title action. (*Ibid.*)

The trial court entered judgment in favor of the son based on the three-year statute of limitations on actions for fraud and mistake in section 338. (*Muktarian, supra*, 63 Cal.2d at p. 559.) The father appealed, contending that the trial court erred in

---

[6] The deed conveyed title to the son subject to a life estate in the father. (*Id.* at p. 559.)

9

ruling that section 338 barred his action. (*Muktarian, supra*, 63 Cal.2d at pp. 660–661.)

The Supreme Court in *Muktarian, supra*, 63 Cal.2d 558 agreed with the father on the statute of limitations issue, reasoning as follows: "Since there is no statute of limitations governing quiet title actions as such, it is ordinarily necessary to refer to the underlying theory of relief to determine which statute applies. [Citations.] In the present case, however, it is unnecessary to determine which statute would otherwise apply, for no statute of limitations runs against a plaintiff seeking to quiet title while he is in possession of the property. [Citations.] In many instances one in possession would not know of dormant adverse claims of persons not in possession. [Citation.] Moreover, even if, as here, the party in possession knows of a potential claimant, there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him. [Citation.] Of course, the party in possession runs the risk that the doctrine of laches will bar his action to quiet title if his delay in bringing action has prejudiced the claimant. [Citations.]" (*Id.* at pp. 560–561, fn. omitted.) Here, at all times after he executed the May 2005 deed, plaintiff was in continuous possession of the condominium. And, although he voluntarily shared that possession with defendant and was presumably aware of her potential adverse claim to title, at no time from the execution of the deed in 2005 through the filing of plaintiff's quiet title action in 2018 did defendant assert such an adverse claim of title against him. Thus, under the rationale of *Muktarian, supra*, 63 Cal.2d 558, there was no reason for plaintiff to incur the expense or inconvenience of litigation against defendant. Accordingly, regardless of which statute of limitations governed

10

plaintiff's quiet title claim, it could not have begun to run against him while he was in undisturbed possession of his condominium.

Contrary to defendant's assertion, the Court of Appeal decision in *Ankoanda, supra*, 44 Cal.App.4th 610 is not more closely analogous to the facts of this case and thus does not control our disposition of the statute of limitations issue.  In that case, the plaintiff—the owner of a two-story residence in San Francisco (the City)—initially rented the downstairs portion of it to the defendant in 1974.[7]  (*Ibid*.)  The defendant eventually occupied the entire property.  (*Id*. at pp. 612–613.)  She paid monthly rent, made substantial improvements to the property, and obtained a daycare license for the ground floor unit in 1984. (*Id*. at p. 613.)

In 1986 and 1987, the defendant applied for a grant program through the City and, with the written consent and cooperation of the plaintiff, obtained a grant to improve the property for the purpose of providing day care for low income families.  (*Ankoanda, supra*, 44 Cal.App.4th at p. 613.)  In May 1986, the plaintiff executed a deed granting the defendant ownership of the property, as a tenant in common, along with the plaintiff and a third party.[8]  (*Id*. at p. 613.)  The plaintiff believed she was required to execute the deed so that the defendant could receive the grant from the City.  (*Ibid*.)  She also believed that

---

[7]  The plaintiff moved out of the upstairs portion of the residence in 1976 and had not lived in the residence since.  (*Id*. at p. 612.)

[8]  In 1987, the plaintiff executed a second grant deed conveying a joint tenancy interest in the property to herself, the defendant, and the third party.  (*Id*. at p. 614.)

11

the defendant would reconvey her interest once the grant program was completed.  (*Ibid*.)  The defendant, on the other hand, considered herself a co-owner of the property and believed she shared an equal responsibility for property expenses.  (*Id*. at pp. 613–614.)

In June 1989, the defendant's attorney sent the plaintiff a letter asserting the defendant's joint ownership interest in the property.  (*Ankoanda, supra*, 44 Cal.App.4th at p. 614.)  The plaintiff, however, did not file a quiet title action against the defendant until June 1993.  (*Ibid*.)  Among other defenses to the plaintiff's action, the defendant asserted that it was barred by the three-year limitations period in section 338.  (*Ibid*.)  The trial court rejected the limitations defense and entered a judgment in favor of the plaintiff from which the defendant appealed.  (*Ibid*.)

The Court of Appeal reversed, finding that the applicable statute of limitations was not tolled and concluding that the *Muktarian* tolling rule for parties in possession of property was limited to possession that was "'exclusive and undisputed.'" (*Ankoanda, supra*, 44 Cal.App.4th at p. 616.)  Although the court noted that "*Muktarian*[*, supra*, 63 Cal.2d 558] does not explicitly refer to 'exclusive and undisputed possession,' that type of possession was in fact present there and in the cases relied upon in it." (*Ankoanda, supra*, 44 Cal.App.4th at p. 616.)  The court in *Ankoanda* therefore concluded that the *Muktarian* tolling rule did not apply to a plaintiff who jointly owned, but did not occupy, a property.  (*Id*. at p. 618.)

To the extent that *Ankoanda, supra*, 44 Cal.4th 610 purports to limit the *Muktarian* tolling rule to those owners whose possession is "'exclusive and undisputed,'" we disagree with that conclusion.  Among other things, as the court in

12

*Ankoanda* acknowledged, no such limitation appears in *Muktarian*, *supra*, 63 Cal.2d 558. And subsequent to the decision in *Ankoanda*, our Supreme Court cited *Muktarian* with approval, repeating that "[i]t long has been the law that whether a statute of limitations bars an action to quiet title may turn on whether the plaintiff is in undisturbed possession of the land." (*Mayer v. L&B Real Estate* (2008) 43 Cal.4th 1231, 1237 (*Mayer*).) That the court in *Mayer* did not revisit the broad language of the *Muktarian* tolling rule suggests that it was not limited in the manner stated in *Ankoanda*. We therefore are bound to follow that rule. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Further, "[w]e find *Ankoanda*[*, supra*, 44 Cal.4th 610] inapt. The *Ankoanda* court's gloss of 'exclusive and undisputed' possession distinguished the unusual facts before it from the very different circumstances in *Muktarian*[*, supra*, 63 Cal.2d 558]*,* where [the] father neither moved off his property nor gave up its control after granting title to his son." (*Crestmar, supra*, 157 Cal.App.4th at p. 1229.) The facts of this case are more analogous to those in *Muktarian* than those in *Ankoanda*. Like the father in *Muktarian,* plaintiff here never gave up possession of the premises. By contrast, the landlord plaintiff in *Ankoanda* did not occupy the property when the grant deeds were executed or at any time thereafter. Moreover, in this case—unlike the defendant tenant in *Ankoanda,* who had an attorney send the plaintiff landlord a letter asserting the tenant's joint property interest—defendant never asserted an adverse claim that disturbed plaintiff's possession or threatened his claim to superior title. Instead, she continued to occupy the property based on her representations that she needed a place to live. (See

*Salazar, supra*, 236 Cal.App.4th at p. 478, quoting *Secret Valley Land Co. v. Perry* (1921) 187 Cal. 420, 426–427 [The statute of limitations in a quiet title action does not begin to run "'until the hostile claim is asserted in some manner to jeopardize the superior title. So long as the adverse claim lies dormant and inactive the owner of the superior title may not be incommoded by it and has the privilege of allowing it to stand indefinitely'"].)

We conclude that the trial court did not err in applying the long-standing *Muktarian* tolling rule to defendant's statute of limitations defense. As long as plaintiff enjoyed possession of the condominium and defendant did not press her adverse claim against him in a manner that threatened or disturbed that possession, no statute of limitations began to run.

### 2. Application of the Rule to Section 1590

Defendant also argues that the *Muktarian* "tolling rule has only been applied in quiet title actions, not in actions to recover a gift under . . . section 1590." But plaintiff here did allege a quiet title claim seeking to be declared owner in fee simple of the condominium based on theories of undue influence and lack of consideration. Although, by the time of trial, his claim to sole ownership was premised on his theory that the grant deed was a gift in contemplation of marriage, that new theory of relief did not affect the tolling of the statute of limitations. (See *Muktarian, supra*, 63 Cal.2d at p. 560; *Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 944.) Thus, that plaintiff's theory of relief at trial was premised on section 1590 does not change our analysis of whether the *Muktarian* tolling rule applies to the quiet title claim under the facts of this case.

14

B.    *Evidence Code Section 622*

Defendant argues that the handwritten notation on the May 2005 deed describing it as a "bona fide gift" and asserting that plaintiff "received nothing in return" is conclusively presumed to be true under Evidence Code section 622.[9] According to defendant, plaintiff therefore was prevented from introducing evidence that contradicted the handwritten notation.

Defendant's contention requires us to interpret the May 2005 deed in light of the mandates of Evidence Code section 622. "Interpretation of a deed ordinarily is a question of law we undertake de novo.  (*Faus v. City of Los Angeles* (1967) 67 Cal.2d 350, 362 . . . .)"  (*City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 252.)

As an initial matter, the express language of Evidence Code section 622 makes clear that its conclusive presumption does not apply to recitals of consideration.  Here, the handwritten notation is a recital concerning consideration, i.e., it asserts that nothing of value was promised in exchange for the conveyance of the joint interest.  Thus, the facts set forth in the notation were not subject to Evidence Code section 622's conclusive presumption.

In addition, the handwritten notation characterizing the conveyance as a gift appears to conflict with the printed recital confirming the receipt of valuable consideration.  Therefore, the resulting ambiguity could be explained by extrinsic evidence of the context within which the joint property interest was

---

[9]    Evidence Code section 622 provides:  "The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto . . . ; but this rule does not apply to the recital of consideration."

15

transferred.  (*Baker v. Ramirez* (1987) 190 Cal.App.3d 1123, 1132.)

Finally, Evidence Code section 622 does not apply to prevent the introduction of evidence showing fraud or other grounds for rescission.  (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 625; *Bruni v. Didian* (2008) 160 Cal.App.4th 1272, 1291.)  Here, plaintiff sought to quiet title based on a theory that the grant deed should be rescinded as a gift made in contemplation of marriage.  Therefore, evidence establishing the statutory ground for that equitable relief was admissible notwithstanding Evidence Code section 622.

C.    *Sufficiency of Evidence*

Defendant also maintains that the trial court's ruling on the quiet title claim was not supported by the evidence.  As defendant views the trial evidence, it was insufficient to show that she refused to marry plaintiff or that the contemplated marriage was given up by mutual consent, as required by section 1590.

We review the trial court's factual findings for substantial evidence.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.)  "Substantial evidence is a deferential standard, but it is not toothless.  It is well settled that the standard is not satisfied simply by pointing to "'isolated evidence torn from the context of the whole record.'"  (*People v. Johnson* (1980) 26 Cal.3d 557, 577 . . . [(*Johnson*)], quoting Traynor, The Riddle of Harmless Error (1969) p. 27; see *Johnson*, [*supra*, 26 Cal.3d] at p. 578.)  Rather, the evidence supporting the [trial court's] finding must be considered "'in the light of the *whole*

*record*'" 'to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value . . . .' (*Johnson,* [*supra,* 26 Cal.3d] at pp. 577, 578.)" (*In re I.C.* (2018) 4 Cal.5th 869, 892.)

Contrary to defendant's assertion, there was evidence from which a reasonable trier of fact could infer that the contemplated marriage was given up by mutual consent. The trial court found plaintiff's testimony on the section 1590 claim to be more credible than that of defendant. Thus, the court could have reasonably inferred that defendant's pregnancy, decision to raise the child, and efforts to meet a new boyfriend, were, in effect, part of a mutual agreement to forego the contemplated marriage. Further, the court could have reasonably concluded that under all of the circumstances of the case, it would be just for plaintiff to recover his gift.

D.     *Waiver and Estoppel*

Defendant maintains that the trial court erred by not finding that plaintiff had either waived or was estopped from asserting his claim to defendant's interest in his property. Citing to evidence that plaintiff and defendant executed a joint deed of trust in 2016 to secure a line of credit, defendant concludes that plaintiff's conduct in obtaining defendant's signature on that joint deed waived any claim of sole ownership in the property he may have had; or, in the alternative, estopped him from asserting a claim of sole ownership of the property.

Although defendant asserts that she pleaded waiver and estoppel as affirmative defenses and that she objected to the trial court's failure to rule on those defenses in its written decision,

17

the record does not reflect that defendant adequately raised her waiver and estoppel arguments at trial. As an initial matter, her answer contains no factual basis for her boilerplate assertions of waiver and estoppel. Moreover, her trial brief did not mention those defenses, she did not testify about those defenses, and she did not argue those defenses at trial. Finally, defendant's belated objection based on the court's failure to explicitly rule on the defenses in its written decision was untimely because trial was concluded in less than eight hours and defendant did not raise the issue with the court prior to the matter being submitted as required under Code of Civil Procedure section 632. Defendant therefore forfeited her waiver and estoppel contentions by failing adequately to raise them in the trial court. (Code Civ. Proc., §§ 632, 634; *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 982–983.)

Even assuming defendant had preserved her waiver and estoppel contentions on appeal, the evidence before the trial court was sufficient to support implicit findings that plaintiff did not waive his claim to full title to the condominium and was not otherwise estopped from asserting that claim against defendant.

"'The question of waiver is a question of fact, and when supported by sufficient evidence to justify the inference of waiver is binding upon this court.' [Citations.] 'To constitute waiver it is essential that there be an existing right, benefit, or advantage, a knowledge, actual or constructive, of its existence, and an *actual intention to relinquish it*, or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished.' [Citation.] "'*Waiver always rests upon intent*. Waiver is the intentional relinquishment of a known right after knowledge of the facts." [Citation.] It implies

18

"the intentional forbearance to enforce a right.'" [Citation.]" (*Kay v. Kay* (1961) 188 Cal.App.2d 214, 218.)

Estoppel requires conduct on the part of the person to be estopped which induces reasonable reliance on it by the party asserting the estoppel. (*Rheem Mfg. Co. v. United States* (1962) 57 Cal.2d 621, 626 ["There can be no estoppel unless the party asserting it relied to his detriment on the conduct of the person to be estopped"].)

Here, defendant's waiver and estoppel claims are premised solely on plaintiff's conduct in requesting that defendant execute a deed of trust necessary to secure a line of credit. Yet, at trial, defendant asked only one question about the deed, in response to which plaintiff merely confirmed he "recognized" that defendant was a record owner of the property. But that fact—as the trial court pointed out during argument—was undisputed and had already been established by the May 2005 deed. And, as the trial court noted during argument, defendant's signature on the 2016 deed was necessary to secure the line of credit. Based on the evidence, the trial court could have reasonably inferred that plaintiff, by requesting that defendant execute the 2016 joint deed, did not manifest an intent to relinquish his right to recover full title to his property, i.e., that request was not so inconsistent with plaintiff's intent to enforce his right as to induce a reasonable belief that he had relinquished that right.

Similarly, substantial evidence supported a reasonable inference that defendant did not detrimentally rely on plaintiff's conduct with respect to the 2016 joint deed. Plaintiff's request to execute the deed for the purpose of securing a line of credit, without more, did not suggest or imply that he wanted defendant to change her position to her detriment by, for example,

19

refraining from filing a claim to title against him.  And, defendant did not testify about the joint deed, much less testify that she somehow relied upon plaintiff's request to her detriment.

E.     *Amendment to Conform to Proof*

Defendant's final contention is that the trial court abused its discretion by allowing plaintiff to amend his pleading to conform to proof at trial.  Defendant also suggests that the ruling allowing the amendment was defective because it did not require plaintiff to file an amended complaint.

Leave to amend a complaint is within the sound discretion of the trial court and "'"[t]he exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse."'" (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.) "Such amendments have been allowed with great liberality 'and no abuse of discretion is shown unless by permitting the amendment new and substantially different issues are introduced in the case or the rights of the adverse party prejudiced [citation].' . . . [Citations.]" (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31.)  "The basic rule applicable to amendments to conform to proof is that the amended pleading must be based upon the same general set of facts as those upon which the cause of action or defense as originally pleaded was grounded." (*Union Bank v. Wendland* (1976) 54 Cal.App.3d 393, 400–401.)

In his trial brief filed the day of trial, plaintiff raised section 1590 as an alternative theory of relief based on the same general set of facts.  Plaintiff also candidly discussed the theory with the trial court and counsel prior to the beginning of testimony, and defendant did not object to it at that time.

20

Plaintiff then proceeded to try his case on the theory that the May 2005 deed had been given to defendant in contemplation of marriage. At no point during the testimony of either party did defendant object to any question relating to that theory on the grounds it was irrelevant to the pleadings or otherwise prejudicial. In fact, it was not until plaintiff moved to amend to conform to proof at the end of trial that defendant finally objected, suggesting that the request was untimely and deprived her of the opportunity to depose plaintiff on the new claim, an objection which the court overruled. But even then, defendant did not specify any new testimony or evidence that she was forced to confront at trial that was not disclosed during discovery. Moreover, defendant did not suggest or imply that a formal written amendment was required. (See *Provost v. Worral* (1956) 142 Cal.App.2d 367, 373 ["'where the motion to amend is made during the trial and thereafter the case is tried as if the amendment had been made, the parties by their actions are estopped and cannot later complain that no formal amendment was in fact made'"].) Under these circumstances, there was no abuse of discretion.

# V. DISPOSITION

The judgment is affirmed.  Plaintiff is awarded costs on appeal.

KIM, J.

We concur:

BAKER, Acting P. J.

MOOR, J.